## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN C. WALLACE and** | * | |
| **ANNIE WALLACE** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| **v.** | * | |
| | * | **Civil. No.:     PJM 16-2750** |
| **OCWEN LOAN SERVICING, LLC** | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM OPINION

John and Annie Wallace sued Ocwen Loan Servicing ("Ocwen") in the Circuit Court for Prince George's County on June 2, 2016 alleging violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq.,* and breach of contract in connection with the modification of the terms of their mortgage loan. ECF No. 2. Ocwen removed the matter to this Court and has filed a Motion to Dismiss. ECF No. 8. For the reasons discussed below, the Court will **GRANT** the Motion.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, the Wallaces requested a modification of the mortgage on their primary residence at 6907 Aspen Leaf Court, Bowie, Maryland, due to severe financial hardship. ECF No. 2 ¶¶ 2, 3. Indymac Bank Home Loan Servicing ("Indymac"), then their loan servicer, offered the Wallaces reduced payments for a trial period (hereinafter "Trial Plan"), agreeing that, "providing [that] the terms of the agreement are met and your financial situation shows affordability to service your debts, [Indymac] will re-evaluate your financial situation in order to review a loan modification . . . " ECF No. 8-3 at 2.

1

The Wallaces apparently believed their modification was part of the Government's Home Affordable Modification Program ("HAMP"). In modifications made pursuant to the HAMP program, a certified lender and borrower negotiate a new monthly payment and if the borrower makes that payment in full and on time during a several month "trial period," the new monthly payment is formalized in a loan modification.

After the Wallaces made their first payment, the rights to service their loan were transferred to Ocwen Loan Servicing ("Ocwen"). ECF No. 2. ¶ 4. The Wallaces allege that Ocwen failed to honor the terms of the agreement they had made with Indymac, offering them instead loan modification terms that were significantly less generous. *Id.* ¶ 6. Because they could not afford those new terms, the Wallaces further allege that their credit scores have suffered and they are in danger of foreclosure. *Id.* ¶¶ 9, 10.

Ocwen counters that it was under no obligation to make permanent the reduced payments that the Wallaces had negotiated with Indymac after the term of the Trial Plan because that agreement was not made pursuant to the HAMP program. ECF No. 8-2 at 5. Instead, says Ocwan, Indymac only committed to "re-evaluate" the Wallaces' financial situation, which Ocwen did, and as a result, offered them a different loan modification. *Id.*

The Wallaces, represented by counsel, filed suit in the Circuit Court of Prince George's County on June 2, 2016. Ocwen was served with process on July 5, 2016 and timely removed the case to this Court on August 3, 2016. Ocwen filed a Motion to Dismiss on August 8, 2016, which has not been opposed by Plaintiffs.

## II.  **ANALYSIS**

Whether a complaint adequately states a claim for relief is normally judged under Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).  Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.* A court can look to materials attached to a motion to dismiss without transforming it into a motion for summary judgment where they "(1) [are] clearly integral to, and [were] relied upon in, [the] complaint; and (2) [the opposing party] does not dispute [their] authenticity. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

The Wallaces' claims under MCPA contain allegations of fraud. Claims for fraud must meet the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A plaintiff alleging claims that sound in fraud must, at a minimum, describe the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted).

The Complaint alleges two causes of action. First, the Wallaces allege that Ocwen violated the MCPA by representing to the Wallaces that the payments owed under Ocwen's proposed modification would be different than those under the Trial Plan. ECF No. 2 ¶ 22. Second, the Wallaces allege that Ocwen failed to "properly service" the Wallaces' mortgage loan account by (1) failing to "apply proper HAMP guidelines" to their modification application, and (2) failing to "honor the HAMP modification agreement made with Indymac." ECF No. 2 ¶ 26.

a.  *MCPA Claims*[1]

The MCPA prohibits "unfair or deceptive trade practices," defined, among other things, as any "false, falsely disparaging, or misleading oral or written statement[s] . . . which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1). Under Maryland law, in "attempting to collect an alleged debt," a collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202 (8). A "collector" is "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). "Consumer transaction," in turn, includes "any transaction involving a person seeking or acquiring real or personal property . . ." *Id.* at (c).

The Wallaces claim that Ocwen engaged in "unfair or deceptive trading [sic] practices" when it "made false and misleading statements" by informing the Wallaces that "[their] HAMP trial payment terms would differ from those contractually agreed upon with Indymac." ECF No. 2 ¶ 22(b). The Wallaces further allege that Ocwen benefited from these misrepresentation by collecting "additional fines, fees and interest payments from the Plaintiffs" in addition to

---

[1] Some of the Wallaces' allegations appear to arise from state consumer protection laws other than the Maryland Consumer Protection Act, but for clarity and consistency with the complaint, the Court will continue to refer to these claims as "MCPA claims."

allowing it to "collect[] a higher monthly payment, due to a higher interest rate that the Plaintiffs would have been forced to pay in violation of the HAMP modification agreement." *Id.* ¶¶ (b)-(c).

The Wallaces' allegations are hard to understand and untangle. They seem to claim that Ocwen's offer of a loan modification during the Trial Plan was somehow unfair or deceptive because it enforced a right "with knowledge that it did not exist." It is unclear from the Complaint which right the Wallaces assert Ocwen did not possess but attempted to enforce. As clearly as the Court can tell, their theory is this: Indymac agreed to a HAMP mortgage loan modification and, as its successor, Ocwen was bound to comply with the requirements of the HAMP program. If the Trial Plan had been a HAMP modification, Ocwen would have been required to ratify its terms in a loan modification, assuming the Wallaces complied with those terms during a trial period. In that case, Ocwen would have had no right to offer a loan modification on terms different than under the Trial Plan. Therefore, in offering different modification terms, Ocwen exercised a right it did not possess.

These claims are not only implausible, but belied by the documents themselves. Indymac did not agree to a HAMP loan modification with the Wallaces. Nowhere in the agreement for the Trial Plan does Indymac represent that the Trial Plan is part of the HAMP program and, in fact, the enumerated terms in the contract differ from the requirements of the HAMP program.[2] While under HAMP program the loan servicer would have been required to continue with the same terms after a successful trial period, the Trial Plan agreement only guarantees that the servicer would "re-evaluate your financial situation in order to review a loan modification." ECF No. 8-3

---

[2] Ocwen submitted the Trial Plan agreement as an exhibit to its Motion to Dismiss. *See* ECF No. 8-3 at 3. The Court may consider the agreement without transforming the Motion to Dismiss into a summary judgment motion since the agreement is integral to both claims in the Complaint and Plaintiffs have not challenged its authenticity. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

at 2. The "Acknowledgement" section of the agreement, which John Wallace signed, says explicitly "[u]pon the completion of this [trial] plan the Loss Mitigation Department, on behalf of the Investor, will then review my financial situation for possible loan modification providing my situation displays the affordability to service my debts." *Id.* at 3.

Thus, the text of the agreement establishing the Trial Plan clearly establishes that it is not a HAMP loan modification. Since the Trial Plan was not a HAMP modification, Ocwen's explanation of the Wallaces' obligations were fair and forthright, rather than unfair and deceptive. For the same reason, in offering a loan modification, Ocwen did not exercise a right it did not possess, but rather fulfilled a contractual obligation, albeit early.

b.  *Breach of Contract*

To prove a breach of contract under Maryland law, a plaintiff must show "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Capitol Radiology, LLC v. Sandy Spring Bank*, 439 Fed. Appx. 222, 226(4th Cir. 2011)(quoting *Taylor v. NationsBank, N.A.,* 365 Md. 166, (2001)). In Maryland, "courts apply the plain meaning of unambiguous contract terms." *Id.*

The Wallaces argue that Ocwen breached the terms of the Trial Plan when it failed to "apply the proper HAMP guidelines to the Plaintiff's Mortgage modification application" and when it failed to "honor the HAMP modification agreement made between Indymac and the Plaintiffs." ECF No. 2 ¶ (a)-(b). Ocwen counters that whole claim is "premised on the false assumption that the Indymac Trial Plan was a 'HAMP modification' agreement," when it was instead it provided conditions that the Wallaces needed to meet "***in order to be reviewed for*** a loan modification –

with no guarantee that such a modification would ultimately be provided, let alone on any specific terms." ECF 8-2 at 6 (emphasis original).

The Court agrees. The Wallaces here failed to plead sufficient facts to support (and the unambiguous language of the Trial Plan contract belies) the notion that Ocwen had a contractual obligation to comply with the terms of HAMP. Absent such an obligation, there can be no breach.

### III.     Conclusion

For the foregoing reasons, the Court with **GRANT** Ocwen's Motion to Dismiss, ECF No. 8.

A separate Order will **ISSUE**.


_____**/s/**_____

**PETER J. MESSITTE**

**UNITED STATES DISTRICT JUDGE**


**November 1, 2016**